IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESUS FRANCO ORNELAS,

      Plaintiff,

vs.                                                                                        No. 21-CV-1031-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 20), dated May 23, 2022, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Plaintiff's motion on July 20, 2022 (Doc. 22), and Plaintiff filed his reply on August 19, 2022 (Doc. 27). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I. PROCEDURAL POSTURE

On March 20, 2018, Plaintiff filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") at 217-19). Plaintiff alleged that he had become disabled on February 8, 2018. (*Id.* at 217, 256-57). Plaintiff's date last insured, the date through which he

could be eligible to receive disability insurance benefits, is December 31, 2023.[1] (*Id*. at 18).

Plaintiff's application was denied at the initial level on June 19, 2018 (*id.* at 58-65), and at the reconsideration level on July 24, 2019 (*id.* at 67-83). Plaintiff requested a hearing (*id.* at 99-100), which ALJ Eric Weiss conducted telephonically on May 3, 2021 (*id.* at 16-27, 34-52). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Nicole B. King (the "VE"). (*Id.* at 34-52).

On May 24, 2021, ALJ Weiss issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 16-27). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 8-9), and on September 9, 2021, the Appeals Council denied the request for review (*id.* at 1-7), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On October 25, 2021, Plaintiff filed the Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision

---

[1] In order to qualify for disability insurance benefits, a claimant must establish that they met the statutory requirements for disability on or before their date last insured. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). The Court includes the date last insured as recited by the ALJ in his May 24, 2021 decision; however, it observes that two Disability Reports indicate that Plaintiff's date last insured was December 31, **2022**. (AR at 297, 300). The parties do not address this date discrepancy, and the Court need not resolve the matter to decide the issues before it.

stands and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citation omitted). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* at 1010 (quotation omitted). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 16-27). First, ALJ Weiss found that Plaintiff met the SSA's insured status

requirements through the relevant period and had not engaged in substantial gainful activity since his alleged onset date of February 8, 2018. (*Id.* at 18). The ALJ then found at step two that Plaintiff suffered from the non-severe impairments of degenerative joint disease of the left hip and obstructive sleep apnea and from the severe impairments of "vascular neurocognitive disorder resulting from cerebrovascular accident and depression." (*Id.* at 18). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 19).

Moving to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 20-25). Having done so, the ALJ concluded that for the relevant period, Plaintiff possessed an RFC to

> perform medium work as defined in 20 [C.F.R. §] 404.1567(c) except that he is able to lift[] 50 pounds occasionally, lift and carry 25 pounds frequently, and push and pull the same. He is also able to work and stand six hours in an eight-hour workday, as well as stand for six hours in an eight-hour workday with normally scheduled breaks. The claimant is also able to understand, remember, and carry out simple instructions and make commensurate work-related decisions in a work setting with few workplace changes. The claimant is also able to interact on a superficial basis with supervisors and coworkers, but he should have no work-related interaction with the public. Finally, he is able to maintain concentration, persistence, and pace for two hours at a time during the workday, with normally scheduled breaks.

(*Id.* at 20). Based on this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work during the relevant period. (*Id.* at 25).

At step five, the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. (*Id.* at 26). The ALJ therefore concluded that Plaintiff's work was not precluded by his RFC and that he was not disabled at any time from February 8, 2018, through the date of the decision. (*Id.* at 27).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to properly assess the opinion of consultative examining psychologist David LaCourt, Ph.D. and consultative examining medical doctor Ross M. Clark, M.D. (*see* Doc. 20 at 8-22) and that he failed to properly assess the prior administrative findings of state agency psychologist Thomas VanHoose, Ph.D. (*see id*. at 22-26). The Court agrees that the ALJ failed to properly assess Dr. LaCourt's opinions and, without reaching the other claims of error, remands on that basis.

### A. Dr. LaCourt

First, Plaintiff contends that the ALJ failed to properly assess the opinion of consultative examining psychologist David LaCourt, Ph.D. (Doc. 20 at 8-16). On May 13, 2019, Dr. LaCourt evaluated Plaintiff at the request of DDS. (AR at 380-83). Dr. LaCourt interviewed Plaintiff, reviewed medical records, and performed testing, including the Wechsler Memory Scale Fourth Edition ("WMS-IV"). (*See id.* at 380-81).

Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate Dr. LaCourt's medical opinions under the revised regulation found in 20 C.F.R. § 404.1520c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *4 & n.8 (10th Cir. July 6, 2021). The revised regulation does not assign any specific evidentiary weight or deference to the medical opinions. *See* 20 C.F.R. § 404.1520c(a). The revised regulation also imposes certain "articulation requirements" on an ALJ in their evaluation of medical opinions. *See id*. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)[,]" the ALJ need not articulate how he considered each individual medical opinion; rather, he need only "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis . . . ." *Id.* § 404.1520c(b)(1). Second, an ALJ must consider five factors when

evaluating medical opinion evidence, *see id.* § 404.1520c(c)(1)-(5); however, he is generally only required to *articulate* his consideration of two of those factors: supportability and consistency. *Id.* § 404.1520c(b)(2). Third and finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he] considered the other most persuasive factors . . . for those medical opinions[,]" including the source's relationship with their client, any specialization, and other factors that tend to support or contradict the medical opinion. *Id.* §§ 404.1520c(b)(3); 404.1520c(c)(3)-(5).

While the revised regulation allows the ALJ some discretion in *how* he articulates his findings on the persuasive value of medical opinion evidence, it provides no leeway as to *whether* he articulates such findings as to each opinion. *See id*. § 404.1520c(b) (providing that the ALJ "***will*** articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record") (emphasis added). In other words, while an ALJ generally "is not required to discuss every piece of evidence," *see Clifton*, 79 F.3d at 1009-10, the duty to address the persuasive value of *all* medical opinion evidence of record—at least at the source level—is mandatory. *See id*.

Even so, the new regulation does not alter the standard of review. Thus, an ALJ's persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes mere conclusion[,]" *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). As before, an ALJ must "consider all relevant evidence in the case record[,]" *Silva v Saul*, No. 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R. §§ 404.1520b, 416.920b), and must provide the Court "with a sufficient basis to determine that

appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).

Here, Plaintiff submits that the ALJ failed to adequately explain how he considered the consistency and supportability factors for Dr. LaCourt's opinions as required by 20 C.F.R. § 404.1520c(b)(2). (Doc. 20 at 8-16). An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions. 20 C.F.R. § 404.1520c. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of supportability and consistency, the "explanation must at least '[e]schew[] rote analysis and conclusory explanations [and] discuss . . . the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . ." *Frazer v. Kijakazi*, No. 20-1147 GBW, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (quoting *Pamela P. v. Saul*, 3:19-CV-575 DJS, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020)) (subsequent citations omitted). Ultimately, the Court agrees with Plaintiff that the ALJ's analysis of Dr. LaCourt's opinions fails to pass muster.

The ALJ recounted many of Dr. LaCourt's examination findings, which were somewhat mixed. The ALJ noted, for example, that Plaintiff reported to Dr. LaCourt that he had "poor short-term memory" but "intact long-term memory." (AR at 23). He mentioned Dr. LaCourt's impression that Plaintiff "deflected" when answering questions to which he did not know the answer but that he "otherwise appropriately engaged with testing." (*Id.*). The ALJ also recounted Dr. LaCourt's findings that Plaintiff "exhibited intact speech and appropriate affect," but provided "concrete" and non-elaborative answers. (*Id.*). The ALJ noted that Dr. LaCourt's

WMS-IV testing showed that Plaintiff had "borderline" immediate memory but "average" visual working memory; that his mental status examination "demonstrated normal attention, good eye contract, and overall cooperative behavior," and that Plaintiff showed "some difficulty with his fund of information and recall of events." (*Id*.). The ALJ indicated that Dr. LaCourt assessed "possible mild vascular neurocognitive disorder." (*Id*. (citing AR at 380-83)). The ALJ concluded that, "[c]onsidering [Dr. LaCourt's] evidence," the Plaintiff was "appropriately limited to simple work tasks that do not require extensive interpersonal contact or task persistence for more than two hours at a time." (*Id*.).

But this is not all the ALJ had to say about Dr. LaCourt's opinions. Later in his decision, he took up the matter of Dr. LaCourt's assessed functional limitations. (*See id*. at 24). He indicated that Dr. LaCourt found "moderate limitations" in Plaintiff's ability to perform complex tasks, to sustain concentration for tasks, and to interact with coworkers. (*Id*.). He also observed that Dr. LaCourt found "moderate to marked" limitations in the areas of adapting to changes in the workplace, in working with supervisors, in working without supervision, and in independently navigating public transportation. (*Id*. (citing AR at 380-83)).

Despite the ALJ's relatively detailed discussion of Dr. LaCourt's opinion, Plaintiff insists that he failed to meet the articulation standard under 20 C.F.R. § 404.1520c(b). Plaintiff does not contend that the ALJ failed to address the requisite factors of supportability and consistency, however. Instead, he maintains that the ALJ's analysis of these factors is "not susceptible to meaningful review." (Doc. 20 at 12). The Court agrees.

### i. Supportability Factor

The ALJ specified that he found Dr. LaCourt's opinions "somewhat persuasive, because [they were] supported by the underlying explanation and examination." (AR at 24). In other

9

words, he found Dr. LaCourt's opinions internally supported by his own examination findings, discussed above, and by his explanations. This conclusion, of course, bears upon the supportability factor, which considers how well a medical source supported his own opinions with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." (*Id*.). Here, the ALJ did not expand upon *how relevant* he found the objective medical evidence upon which Dr. LaCourt relied or his supporting explanations, only that they were supportive. Logically, a finding that an opinion was "supported by the underlying explanation and examination" would weigh in favor of finding an opinion persuasive. Yet, here, the ALJ found Dr. LaCourt's opinions only "*somewhat* persuasive." (*Id*.). Without further explanation, the Court cannot square the ALJ's finding that these opinions were only "*somewhat* persuasive" with his explanation that it was "*because* [they were] *supported* by the underlying explanation and examination." (*See id*.).

Granted, the ALJ did express one gripe with Dr. LaCourt's opinions: that there was "less support for more marked limitations." (*Id*.). Given that the ALJ made this finding in the same breath as his consistency finding, the Court surmises that it was meant to relate not to a lack of internal support for Dr. LaCourt's marked limitations but to a lack of support in evidence from other sources. (*See id*. ("While the undersigned finds less support for more marked limitations, [Dr. LaCourt's opinions are] consistent with the objective medical evidence . . . .")). But even if this finding was meant as a component of his supportability analysis, the ALJ's rationale remains unclear.

According to the ALJ's telling, Dr. LaCourt found "moderate to marked limitations" in the areas of adapting to changes in the workplace, in working with supervisors, in working without supervision, and in independently navigating public transportation. (*See id.*). In reality, Dr. LaCourt found Plaintiff *markedly* limited (not moderately to markedly limited) in the areas of interacting with supervisors and "us[ing] public transportation/travel[ing] to unfamiliar places." (AR at 382). It is not straightforward whether the ALJ found "less support" for the findings he lumped together as "moderate to marked limitations" or whether he found "less support" for Dr. LaCourt's finding of marked limitations in interacting with supervisors and traveling to unfamiliar places. More importantly, the ALJ failed to articulate why or how the "more marked limitations" were "less supported." (*See* AR at 24). Perhaps the ALJ reached this conclusion because Dr. LaCourt failed to provide an explanation for how Plaintiff's mood or neurocognitive disorder impacted his interactions with supervisors, but the ALJ did not say as much, and the Court cannot conjure such rationale on the ALJ's behalf. Indeed, "[j]udicial review is limited to the reasons stated in the ALJ's decision . . . ." *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). The ALJ's conclusory statement that these limitations were "less supported," in the context of an otherwise favorable supportability analysis, simply does not suffice.

The ALJ's difficult-to-follow reasoning is also compounded by omissions in his discussion of Dr. LaCourt's examination findings. For instance, the ALJ recounted that "[i]n terms of mental status, [Plaintiff's] examination [by Dr. LaCourt] demonstrated normal attention." (AR at 23). But as Plaintiff points out, the ALJ omitted a relevant portion of Dr. LaCourt's mental status finding. Dr. LaCourt qualified his finding of normal attention by indicating that Plaintiff's "[a]ttention was in the normal range, *with a below-normal level of*

*general concentration*." (AR at 381 (emphasis added)). Given the admonition that an ALJ may not mischaracterize or downplay evidence, *see Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018), the ALJ's omission leads the Court to question whether the ALJ properly considered Dr. LaCourt's examination findings. In addition, Plaintiff points out that the ALJ failed to mention critical findings by Dr. LaCourt: that Plaintiff was only "partially" oriented to the general situation, that there was "an undefined but still reduced-awareness period around the stated time of his [stroke]," that his mood was "pessimistic and dysphoric," and that he failed to recall the last president, his medications, and a sampling of recent events. (Doc. 20 at 14 (citing AR at 381)). While the ALJ could have provided a more enlightening description of Dr. LaCourt's findings as they related to Plaintiff's recall, the ALJ was not "required to discuss every piece of evidence" in Dr. LaCourt's report. *See Clifton*, 79 F.3d at 1009-10. Still, the ALJ's omission of relevant examination findings, when considered alongside his confusing supportability analysis, casts further doubt on the adequacy of his consideration of Dr. LaCourt's opinions. Ultimately, the Court finds that the ALJ's discussion of the supportability factor failed to meet the articulation standard under 20 C.F.R. § 404.1520c(b).

### ii. Consistency Factor

The ALJ's consideration of the consistency factor is equally problematic. This factor calls for a comparison between the subject medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. After his caveat that he found "less support for more marked limitations," the ALJ's consistency finding was as follows: Dr. LaCourt's "opinion is consistent with the objective medical evidence,

which notes subjective complaints of mood swings, difficulty managing anger, and memory loss, which impact the claimant's ability to perform complex tasks or work in conjunction with others." (AR at 24). That the ALJ's consistency finding is written in a way that *supports* a finding of persuasiveness, begs the question: Why did the ALJ ultimately find Dr. LaCourt's opinions only "somewhat persuasive"? After all, the ALJ made an equally favorable finding that Dr. LaCourt's opinions were "supported by the underlying explanation and examination." (*See id*.). Moreover, the ALJ did not specify how consistent Dr. LaCourt's opinions were with other medical evidence, but he *did* describe various medical evidence that he considered consistent with those findings and *no* medical evidence that was inconsistent. (*See id*.). And to the extent the ALJ meant to say that Dr. LaCourt's *marked limitations* were inconsistent with other objective medical evidence, the Court would have expected him to be more explicit. Confusingly, he followed his conclusory finding as to marked limitations with a list of evidence *supporting* Dr. LaCourt's limitations. The ALJ's conclusory finding as to Dr. LaCourt's marked limitations – whether considered in connection with the supportability factor or the consistency factor – is simply not subject to meaningful review.

In her response brief, the Commissioner attempts to expand upon the ALJ's rationale, suggesting that it was reasonable for the ALJ not to incorporate Dr. LaCourt's marked and moderate-to-marked supervision limitations into the RFC, given the inconsistency in Dr. LaCourt's opinions. (Doc. 22 at 16). More specifically, the Commissioner notes that Dr. LaCourt found a moderate-to-marked limitation in working *without* supervision and a marked limitation in working *with* a supervisor. (*Id.*). But the ALJ did not indicate that any inconsistency Dr. LaCourt's supervision findings led to his conclusion that there was "less support for more marked limitations." Rather, these explanations are provided entirely *post hoc* by the

Commissioner and therefore cannot be adopted by this Court. *See, e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). Once again, the Court agrees with Plaintiff that the ALJ's consistency analysis failed to meet the articulation standard under 20 C.F.R. § 404.1520c(b).

### iii. Harmful Error Analysis

The Commissioner is adamant that "[i]n any event, any error was harmless." (Doc. 22 at 16). Plaintiff, on the other hand, insists that the ALJ's analysis of the persuasive value of Dr. LaCourt's opinion was harmful error, because Dr. LaCourt's opinions were "inconsistent with and more limiting than the ALJ's RFC assessment." (Doc. 20 at 14). The failure to adequately articulate the consistency and supportability factors only constitutes "harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (citation omitted). In such a case, the claimant is not prejudiced because the outcome would have remained the same even if the medical opinion was determined to be persuasive. *See id.* at 579.

Here, Plaintiff submits, Dr. LaCourt's opinions and the ALJ's RFC determination are inconsistent in that the RFC determination fails to account for certain functional limitations assessed by Dr. LaCourt. (Doc. 20 at 14-16). The ALJ limited Plaintiff to simple work with few workplace changes, to superficial interactions with supervisors and coworkers, and to no work-related interactions with the public. (AR at 20). The ALJ also determined that Plaintiff could maintain concentration, persistence, and pace for two hours at a time with normal breaks. (*Id.*). Plaintiff contends that this RFC fails to account for Dr. LaCourt's supervision limitations. (Doc. 20 at 15 (citing AR at 20)).

In the area of working without supervision, Dr. LaCourt found a "moderate to marked limitation associated with persistence/frequent breaks." (AR at 382). Notably, the ability to sustain an ordinary routine without special supervision is a mental ability needed for any job. Program Operation Manual System ("POMS") DI 25020.010(B)(2)(a). Dr. LaCourt also found Plaintiff markedly limited in the areas of interacting with supervisors. (AR at 382). Thus, Plaintiff suggests that the ALJ's RFC, and his finding of no disability, is at odds with Dr. LaCourt's supervision limitations. This Court has previously held that an RFC limitation to "occasional superficial interactions with coworkers[] and limited interactions with supervisors" does not adequately account for marked limitations in interacting with co-workers and supervisors. *See Jaramillo v. Saul*, Civ. No. 1:19-CV-00488-KRS, 2020 WL 6781789, at *6-8 (D.N.M. Nov. 18, 2020).

The Court agrees that, had the ALJ found Dr. LaCourt's opinions persuasive, he would have assigned Plaintiff a more restrictive RFC in terms of supervision limitations, which in turn would have resulted in different findings at steps four and five.[2] The ALJ's failure to adequately explain the persuasive value of Dr. LaCourt's opinions was not harmless. Remand is required for the proper consideration of Dr. LaCourt's opinions pursuant to 20 C.F.R. § 404.1520c.

---

[2] Plaintiff also argues that the ALJ failed to "include a limitation on hazards." (Doc. 20 at 16). Dr. LaCourt found a moderate limitation in Plaintiff's awareness of normal hazards and reacting appropriately. (AR at 382). Like the ability to work without special supervision, the ability to be aware of normal hazards and take appropriate precautions is a mental ability needed for any job. *See* POMS DI 25020.010(B)(2)(b). Yet, the ALJ's failure to address the hazards limitation opined by Dr. LaCourt may be harmless here, given that some available jobs identified by the VE do not appear to require exposure to hazards. (*See* Doc. 22 at 17). Nevertheless, on remand, the ALJ would do well to discuss limitations opined by Dr. LaCourt that he or she rejects.

### B. Other Claims

Because a reevaluation of Dr. LaCourt's opinions may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Plaintiff's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. CONCLUSION

Having conducted a thorough review of the administrative record, the Court concludes that the ALJ failed to apply the correct legal standards and that his factual findings were not supported by substantial evidence. Accordingly, Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 20) is **GRANTED.**

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**